IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JIM LYDAY,<br><br>    Plaintiff;<br><br>vs.<br><br>CONOCOPHILLIPS, CONOCO PHILLIPS LONG TERM DISABILITY PLAN, METROPOLITAN LIFE INSURANCE COMPANY;<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE ERISA ADMINISTRATIVE RECORD**<br><br>Case No. 1:08CV144DN<br><br>District Judge David Nuffer |

Plaintiff Jim Lyday has moved for recovery of employee benefits allegedly owed to him under the ConocoPhillips Long Term Disability Plan (the "ConocoPhillips Plan"), and "benefits attendant to long-term disability coverage," including the medical insurance, dental insurance, and life insurance offered to ConocoPhillips' employees.[1] The plaintiff's claims are brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 & 1132(a)(1)(B).[2]

Lyday moved for summary judgment on the administrative record.[3] In support of the motion, Lyday filed portions of the administrative record reviewed by defendant ConocoPhillips and by the ConocoPhillips Plan administrator, defendant Metropolitan Life Insurance Company ("MetLife").

---

[1] Doc. No. 2 at ¶ 47. The plaintiff's complaint also lists "pension credit" as a benefit associated with receiving long-term disability benefits under the ConocoPhillips Plan. But based on the evidence of record, the plaintiff never requested "pension credit" as part of his underlying ERISA claim, and his briefs do not mention a "pension credit" claim for recovery. Therefore, the "collateral benefits," (using plaintiff's terminology, *see, e.g.*, Doc. No. 15 at 28 of 37), at issue in this case include medical, dental, and life insurance, but not "pension credit."

[2] Doc. No. 15 at 2 of 37.

[3] Doc. No. 14.

>   As noted in plaintiff's brief,
>
>> By administrative record, Mr. Lyday refers primarily to his applications for short-term disability and long-term disability benefits and the correspondence between himself and his employers, Conoco Phillips and Holly Corporation, and the correspondence between himself and the long-term disability carrier/administrator, MetLife, relating to his applications for benefits.[4]

Explaining that the full administrative record is voluminous, the defendants have likewise submitted only excerpts from the administrative record.[5]

The administrative record filed does not include any plan documents describing: 1) how and when an employee receiving long-term disability ("LTD") is entitled to medical, dental, and life insurance at employee rates; 2) the benefits afforded ConocoPhillips' retirees; 3) the definition of "retiree" for the purpose of access to ConocoPhillips' employee or retiree benefits; 4) who makes the decisions regarding LTD coverage under the ConocoPhillips Plan or receipt of medical, dental, and life insurance benefits; and 5) the level of authority and discretion afforded these decision-makers under the terms of ConocoPhillips' employee and/or retiree benefit plans.[6] Nonetheless, the parties agree the relevant portions of the administrative record have been filed, and this case can and should be adjudicated on that record.[7]

The court has therefore reviewed the parties' briefs and, as to the standard of review, has accepted their mutual statement that an abuse of discretion standard applies. The court has also reviewed the record available, and as to the relevant facts, will resolve this case based on the information in the record and reasonable inferences to be drawn from that record.

---

[4] Doc. No. 15 at 2 of 37, n. 1.

[5] Doc. No. 21 at 6-7 of 19.

[6] *See* Doc. Nos. 15 & 21.

[7] Doc. No. 21 at 6-7 of 19.

## FACTUAL BACKGROUND

Lyday became disabled while employed by defendant ConocoPhillips at its Woods Cross Refinery. He received short-term disability benefits from ConocoPhillips until February 7, 2003, and received LTD benefits under the ConocoPhillips Plan. Lyday attempted to return to work in March of 2003, but relapsed within ninety days and was deemed disabled. He began receiving ConocoPhillips short-term disability benefits again on May 12, 2003.[8]

In 2003, ConocoPhillips sold the Woods Cross Refinery to Holly Corporation. As part of the sale, Holly Corporation agreed to offer employment to ConocoPhillips' employees, including short-term inactive employees.[9] Lyday accepted this employment offer. His employment with ConocoPhillips ended on May 31, 2003,[10] and he became an employee of Holly Corporation on June 1, 2003.[11]

On May 28, 2003, Lyday completed an application requesting commencement of his ConocoPhillips retirement benefits effective June 2003,[12] and he elected to receive a lump sum rollover distribution of all of his ConocoPhillips retirement assets.[13] He submitted these forms to ConocoPhillips Central Administration – Retirement Services on May 28, 2003. As of that date, the straight line annuity owed under his ConocoPhillips retirement plan was $1685.22 per month.[14]

---

[8] Doc. No. 2 at ¶¶ 2, 17 & 21; Doc. No. 8 at ¶¶ 17 & 21; Doc. No. 15-8 at 2 of 11.

[9] Doc. No. 15-1 at 5 of 21.

[10] Doc. No. 15-2.

[11] Doc. No. 2 at ¶¶ 7, 13.

[12] Doc. No. 21-1 at 1 of 22.

[13] Doc. No. 21-1 at 3 of 22.

[14] Doc. No. 21-1 at 2 of 22.

On June 12, 2003, Lyday filed a charge of discrimination against ConocoPhillips, alleging he was subjected to disparate treatment, age-based and disability-based harassment, and a hostile, intimidating and offensive work environment while employed at ConocoPhillips.[15]

Lyday's financial planner contacted ConocoPhillips on July 2, 2003, and requested information about medical and life insurance options available to Lyday through ConocoPhillips. Representatives at ConocoPhillips advised the financial planner, and ultimately Lyday himself, that based on the paperwork Lyday submitted before leaving, Lyday retired from ConocoPhillips as of June 1, 2003. Lyday claimed he did not intend to retire, but after further discussion with ConocoPhillips' representatives, appeared to understand that he had, in fact, retired from ConocoPhillips when he submitted his retirement papers for a June 1, 2003 retirement date.[16]

On July 15, 2003, Holly Corporation advised Lyday that he was eligible to receive Holly Corporation's short-term disability benefits. Holly Corporation's letter stated:

> Holly Refining and Marketing Company will allow you to begin STD benefit payments effective June 1, 2003. The full benefits available under Holly Refining and Marketing Company's plan will be available for 26 weeks beginning on May 18, 2003 and will end on or before November 14, 2003. Since you have been employed for more than 10 years, Holly Refining and Marketing Company's STD plan will pay full pay for the periods necessary or until November 14, 2003, whichever comes first. If you cannot return to work by November 14, 2003, your employment will be terminated.
>
> Since your STD (UAB) benefits started while employed by ConocoPhillips, any claim for Long Term Disability will need to be filed with the carrier and plan in place for ConocoPhillips.[17]

---

[15] Doc. No. 15-8 at 4 of 11.

[16] Doc. No. 21-1 at 10 of 22.

[17] Doc. No. 2 at ¶¶ 7, 13; Doc. No. 15-2 at 7 of 15.

Lyday received STD benefits from Holly Corporation dating back to the first day of his employment at that company. By July 24, 2003, he had also elected to receive medical, dental, LTD, and AD & D coverage through Holly Corporation.[18]

In November of 2003, Lyday submitted claims for LTD coverage under both the ConocoPhillips Plan and the Holly Corporation Plan. MetLife is the claim administrator for both plans.[19] After reviewing Lyday's disability onset date, the date he returned to work, and the date he again went on disability, MetLife approved Lyday's claim for LTD benefits under the ConocoPhillips Plan.[20] Lyday's claim for LTD coverage under the Holly Corporation Plan was denied.[21]

Lyday contacted ConocoPhillips and Holly Corporation on November 10, 2003, to ask how his medical, dental, and life insurance benefits would be provided after he started receiving LTD benefits.[22] Lyday explained his interpretation of available benefits as follows:

> Under ConocoPhillips or Holly Corp. LTD plans, medical insurance benefits and life insurance benefits premiums would be paid out as follows:[23]
>
> - Medical           $ 109.00 I pay for first 24 months
> - Dental            Carried same as paying now
> - Life Insurance    Same as I am paying now

Holly Corporation responded by confirming that Lyday's employment with Holly Corporation was officially terminated as of the close of business on November 14, 2003, and Lyday was thereafter entitled to COBRA benefits for medical and dental insurance.[24]

---

[18] Doc. No. 15-2 at 14 of 15.

[19] Doc. No. 2 at ¶ 18.

[20] Doc. No. 2 at ¶ 27; Doc. No. 15-3 at 1of 15..

[21] Doc. No. 2, ¶ 19; Doc. No. 15-3 at 13 of 15.

[22] Doc. No. 15-3 at 4 of 15; Doc. No. 21-1 at 17 of 22.

[23] Doc. No. 21-1 at 17 of 22.

[24] Doc. No. 15-3 at 5, 11 of 15.

MetLife advised Lyday that he was eligible for LTD benefits under the ConocoPhillips Plan, but the monthly benefit payment would be zero dollars. MetLife explained that under the terms of the ConocoPhillips Plan, the LTD payment owed is calculated by subtracting certain listed sources of income received by the LTD recipient from his or her monthly benefit available under the plan. If a LTD beneficiary received a lump sum settlement from the Phillips Retirement Income Plan, the monthly LTD benefit owed "will be reduced by the amount of the straight-life annuity used to compute the lump sum,"[25] "whether you are actually receiving [retirement benefits] or not."[26] Moreover, the monthly LTD payment was further reduced by the amount the LTD recipient was estimated to receive under Social Security.[27] As applied to Lyday, MetLife explained:

> Your monthly benefit [under the ConocoPhillips Plan] will be $2,122.47, gross, from that we will reduce your benefit by your other current income benefit adjustments. These adjustments include Social Security Disability Income in the amount of $1,650.00 per month and Pension/Retirement benefits from ConocoPhillips in the amount of $ 1,685.22 per month. According to your plan once your LTD benefit is reduced for retirement benefits (whether you are actually receiving them or not), the minimum monthly benefit no longer applies. Therefore, your LTD benefit will be $0.00 beginning 12/1/03.[28]

Regarding Lyday's claim for medical, dental and life insurance as benefits attendant to receipt of LTD, ConocoPhillips explained Lyday was not a company employee receiving LTD benefits, but rather a retired employee. As such, Lyday was entitled to receive insurance benefits at retiree rates provided he timely requested those benefits. Since Lyday had cancelled his personal accident insurance, and did not timely elect to receive Group Term Life Insurance or medical, dental and Flexible Spending Account benefits under COBRA, Lyday was not entitled to

---

[25] Doc. No. 21-1 at 13 of 22.

[26] Doc. No. 21-1 at 12 of 22..

[27] Doc. No. 21-1 at 13 of 22.

[28] Doc. No. 2 at ¶ 30; Doc. No. 15-5 at 2 of 7.

receive life insurance or COBRA benefits through ConocoPhillips.[29] However, as to his request for medical insurance, ConocoPhillips acknowledged receipt of that request on November 26, 2003, and implemented the benefits to begin on December 1, 2003. However, since the medical insurance benefits were available to Lyday "as a retiree of the Company," and not as ConocoPhillips employee receiving LTD while employed but on a leave of absence from the company, Lyday was required to pay retiree rates, not the lower employee rates, for the insurance.[30]

On April 29, 2004, while Lyday's discrimination claim against ConocoPhillips was still pending before the EEOC, Lyday filed a civil ERISA action against ConocoPhillips, the ConocoPhillips Plan, Holly Corporation, the Holly Corporation Long Term Disability Plan, and the MetLife Long Term Disability Plan.[31] At a mediation held on November 18, 2004, Mr. Lyday settled his claims against Holly Corporation. He dismissed the remainder of his lawsuit without prejudice.[32]

On May 9, 2005, Lyday asked the EEOC to issue a Notice of Right to Sue letter so he could pursue his discrimination action against ConocoPhillips. Lyday received the letter on June 25, 2005,[33] and on September 27, 2005, he filed a lawsuit against ConocoPhillips, the ConocoPhillips Plan, the Holly Corporation Long Term Disability Plan, and Metropolitan Life Insurance Company.[34] Upon review of the defendants' motions to dismiss and for summary judgment, all of Lyday's claims were dismissed with prejudice save one: Lyday's Third Cause of Action

---

[29] Doc. No. 21-1 at 19-20 of 22.

[30] Doc. No. 15-6 at 3 of 9.

[31] *Lyday v. ConocoPhillips, et. al.,* 1:04CV00061-PCG (D. Utah 2004).

[32] Doc. No. 15-8 at 5-6 of 11.

[33] Doc. No. 15-8 at 4.of 11.

[34] *Lyday v. ConocoPhillips, et. al.,* 1:05CV116-PGC (D. Utah 2005).

against the ConocoPhillips Plan, and MetLife Insurance as the claim administrator/insurer of the ConocoPhillips Plan, was dismissed without prejudice to re-filing after Lyday exhausted the administrative procedures required under ERISA.[35]

Lyday filed the above-captioned lawsuit on December 1, 2008. The complaint alleges the ConocoPhillips Plan and MetLife violated ERISA by depriving him of LTD coverage and insurance benefits attendant to LTD coverage, including medical insurance, dental insurance, life insurance, and pension credit afforded under the ConocoPhillips Plan.[36]

## ISSUES PRESENTED

Lyday's motion for judgment on the administrative record alleges the defendants erred in concluding: 1) Lyday retired from his employment at ConocoPhillips; 2) Lyday's monthly LTD payment is subject to an offset for retirement monies Lyday rolled over, but is not actually receiving, from his ConocoPhillips Retirement Plans; and 3) Lyday is not entitled to group health, dental, and life insurance as a LTD recipient because he retired from ConocoPhillips. Lyday's motion and initial brief claimed the foregoing decisions were arbitrary and capricious, and the defendants abused their discretion when they made these decisions.[37]

After further consideration, however, Lyday has abandoned his claim that the LTD monthly benefit owed was improperly calculated. Lyday's reply brief states:

> Having carefully considered this particular issue, Mr. Lyday is no longer challenging the impact of rolling over the funds in his retirement accounts on his receipt of long-term disability benefits (or non-receipt of such benefits) from MetLife.
>
> Such [a] reduction of benefits (when Mr. Lyday was not actually receiving any retirement benefits on a monthly basis) is certainly unfair and nobody told him that this would happen to him. But the plan documents do provide that MetLife can

---

[35] Doc. No. 15-8 at 4, 8 of 11.

[36] Doc. No. 2 at ¶¶ 47-48.

[37] Doc. No. 14.

8

reduce the long-term disability benefits which Mr. Lyday was entitled to receive by payments from the Phillips Retirement Income Plan, even if he was "receiving" such payments in the form of a lump sum settlement.

. . . [T]he plan documents seem to control the outcome here. Unfortunately, they dictate a very harsh result for Jim Lyday.[38]

Based on the concessions in Lyday's reply brief, the court's inquiry is limited to deciding whether Lyday is entitled to receive medical, dental, and life insurance at rates offered to LTD employees employed by the company, or whether Lyday is a "retiree" and must pay retiree rates for the requested insurance benefits.

## STANDARD OF REVIEW

A denial of benefits challenged under 29 U.S.C. 1132(a)(1)(B) must be reviewed under a de novo standard "unless the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[39] Although the parties have not filed the ConocoPhillips Plan language discussing the administrator's duties and authority, based on their briefs, the parties agree that the court must determine whether the denial of Lyday's claims was arbitrary and capricious and an abuse of discretion.[40] The court is not determining whether Lyday was, in the district court's view, entitled to LTD and associated insurance benefits.[41]

An employer who not only determines benefit eligibility under ERISA, but also pays any approved claims has a conflict of interest. Similarly, an insurance company plan administrator who serves the dual role of both evaluating and paying ERISA claims has a conflict of interest.[42]

---

[38] Doc. No. 25 at. 8-9 of 13.

[39] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[40] Doc. No. 15 at 23-25 of 37.

[41] *Sandoval v. Aetna Life & Cas. Ins. Co*., 967 F.2d 377, 381 (10th Cir. 1992).

[42] *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *Foster v. PPG Industries, Inc.*, 693 F.3d 1226, 1232 (10th Cir. 2012).

Any conflict of interest by those evaluating a claim must be weighed as a factor, but it is only one factor a reviewing judge takes into account when determining if the administrator's decision was arbitrary and capricious.[43] The court uses a "combination-of-factors method of review that allows judges to take account of several different, often case-specific, factors, reaching a result by weighing all together."[44] Id. When a conflict of interest exists, the court uses "a sliding scale approach where the reviewing court will always apply an arbitrary and capricious standard, but will decrease the level of deference given in proportion to the seriousness of the conflict.".[45]

## ANALYSIS

The plaintiff states the "key to unraveling [this] case is deciding . . .whether Mr. Lyday retired or did not retire from ConocoPhillips."[46] The precise issue before this court is actually narrower than plaintiff's description. That is, this court need not decide whether Lyday retired, but rather whether the defendants abused their discretion when they decided Lyday retired from ConocoPhillips in May of 2003.[47]

While employed for ConocoPhillips, Lyday's employee benefits included medical, dental, life insurance, and personal accident insurance at reduced rates, and LTD coverage through the ConocoPhillips Plan. If Lyday received LTD benefits while actively employed but on a leave of absence from the company, he was entitled to continue receiving medical insurance at the cost of $109.00 per month for the first 24 months, and life and dental insurance at the employee rate.[48]

---

[43] *Glenn*, 554 U.S. at 116.

[44] *Foster*, 693 F.3d at 1232.

[45] *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1361 (10th Cir. 2009).

[46] Doc. No. 25 at 12 of 13.

[47] *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1363 (10th Cir. 2009) (holding the plan administrator did not abuse its discretion by finding a claimant was not an "employee," but rather a "contractor," and was therefore not a plan participant entitled to ERISA benefits).

[48] Doc. No. 21-1 at 17 of 22.

However, if he received LTD benefits while retired and not actively employed by ConocoPhillips, any medical and life insurance was available at retiree rates.[49]

Lyday's employment with ConocoPhillips was scheduled to end on May 31, 2003, when ownership of the Woods Cross Refinery was transferred to Holly Corporation. Although Lyday states he did not retire from ConocoPhillips, and was therefore entitled to insurance rates afforded to ConocoPhillips *employees* even after June 1, 2003, the evidence of record overwhelmingly supports the opposite conclusion. Whether by virtue of his retirement or a sale of corporate assets, as of June 1, 2003, Lyday was no longer employed by ConocoPhillips. And on June 12, 2003, he was reminded of this fact when he received his notice from ConocoPhillips for selection of medical or dental insurance benefits under COBRA (Consolidated Omnibus Budget Reconciliation Act). Therefore, irrespective of the whether Lyday intended to "retire" from ConocoPhillips as of May 31, 2003, he was not entitled to insurance benefits afforded to ConocoPhillips' employees after that date.

Assuming it makes a difference whether Lyday's employment status ended by retirement or by job elimination, the ConocoPhillips representatives who investigated and evaluated the retirement issue considered the following information: 1) On May 28, 2012, Lyday completed forms requesting commencement of retirement benefits on June 1, 2003,[50] selected between receiving retirement income as a straight life or as a 50% joint and survivor annuity, completed forms to roll his ConocoPhillips retirement account assets to another fund,[51] and submitted these documents to ConocoPhillips Central Administration – Retirement Services;[52] and 2) upon leaving ConocoPhillips' employment, Lyday received the Retiree Life Insurance Plan Summary

---

[49] Doc. No. 21-1 at 19 of 22.

[50] Doc. No. 21-1 at 1 of 22.

[51] Doc. No. 21-1 at 3-4 of 22.

[52] Doc. No. 21-1 at 2 of 22.

Plan, and using one of the forms included in the packet, cancelled his Personal Accident Insurance and did not elect to continue receiving group life insurance.[53] On July 1, 2003, Lyday was advised, both directly and through his financial planner, that ConocoPhillips considered him retired and entitled to insurance benefits at retiree rates. When Lyday contacted ConocoPhillips to challenge this statement, the basis for his retiree status was explained and he understood and accepted the decision.[54].

ConocoPhillips never denied Lyday's request for medical, dental and life insurance benefits; rather, ConocoPhillips offered the benefits at retiree rates. Lyday failed to timely request life insurance, but was provided medical coverage at retiree rates, along with a copy of the Retiree Medical Benefits Summary Plan Description, within five days after ConocoPhillips received Lyday's written request for such benefits.[55]

ConocoPhillips' conflict of interest played no role in deciding Lyday was not entitled to insurance benefits as an active employee receiving LTD. The evidence of record strongly supports ConocoPhillips' conclusion that Lyday asked to be, was, and is a ConocoPhillips retiree. To the extent he timely and appropriately requested medical, dental, and life insurance benefits through ConocoPhillips, he must pay for those benefits at retiree rates, and not at the rates offered to LTD recipients who are actively employed by ConocoPhillips but on a leave of absence.[56]

---

[53] Doc. No. 21-1 at 19 of 22.

[54] Doc. No. 21-1 at 10 of 22.

[55] Doc. No. 21-1 at 19 of 22.

[56] *See, e.g.*, *McKay v. Reliance Standard Life Ins. Co.*, 2009 WL 5205375 (E.D.Tenn. 2009)(holding an ERISA insurer's denial of coverage was not arbitrary and capricious where the claimant had the flu and was working from home when a long-term disability policy was implemented, and policy coverage was not available unless the claimant was active at work when the policy went into effect).

## CONCLUSION AND ORDER

Plaintiff's motion for summary judgment is DENIED, and his complaint is dismissed with prejudice. A separate JUDGMENT in favor of the defendants will be entered in accordance with this order. The clerk is directed to close the case.

DATED this 26th day of March, 2013.

*[signature]*

DAVID NUFFER
United States District Judge